BAXTER, J., Concurring and Dissenting.
I concur in the judgment sustaining Family Code section 3104, subdivision (f) (section 3104(f)) against a facial challenge under the state and federal Constitutions; vacating the grandparent visitation order presented here on the ground the superior court failed to apply section 3104(f); and remanding the matter to the superior court for it to apply section 3104(f) in the first instance. However, I respectfully decline to join the majority opinion for two reasons:
*231 1. The majority errs in reaching out to consider and reject the mother’s as-applied constitutional challenge to section 3104(f). (See maj. opn., ante, at pp. 226-228.) An “as-applied challenge” is “a claim that a statute is unconstitutional on the facts of a particular case or to a particular party.” (Black’s Law Dict. (7th ed. 1999) p. 223, col. 1.) An essential predicate for an as-applied challenge is that the statute actually have been applied. (See Bowen v. Kendrick (1988) 487 U.S. 589, 600 [101 L.Ed.2d 520, 108 S.Ct. 2562] [“only a facial challenge could have been considered, as the Act had not been implemented”]; accord, Tunstall ex rel. Tunstall v. Bergeson (2000) 141 Wn.2d 201 [5 P.3d 691, 703] [“Under an ‘as applied’ challenge, the party challenging the statute contends that the statute, as actually applied, violated the constitution”].) That is, “there must be a present impermissible application of the challenged statute or ordinance which the court can remedy.” (Tobe v. City of Santa Ana (1995) 9 Cal.4th 1069, 1085 [40 Cal.Rptr.2d 402, 892 P.2d 1145] (Tobe), italics added.) Yet the majority holds (and I agree) that the superior court did not apply section 3104(f), which shifts the burden to the grandparents to rebut the presumption that visitation is not in the best interest of the child, and instead mistakenly analyzed the question under a naked “ ‘best interest of the child’ standard” without according the mother’s decision a presumption of correctness. (Maj. opn., ante, at p. 230.) Because the superior court erred in failing to adhere to the statute and a remand is necessary for that court to apply the statute correctly in the first instance, it is not yet possible to determine whether a hypothetical future order of visitation—if one should be entered—will give “special weight” to the mother’s objections. Likewise, it is not yet known whether the scope and duration of any hypothetical visitation order will raise constitutional concerns. Indeed, the court on remand might decide not to grant visitation at all.
Until the statute is actually (and correctly) applied, it is impossible to know whether an order of visitation will be entered and, if so, its justification and scope. Obviously, the validity of any hypothetical future order will depend on an “analysis of the facts of [the] particular case ... to determine the circumstances in which the statute or ordinance has been applied and . . . whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right.” (Tobe, supra, 9 Cal.4th at p. 1084, italics added.) Without an actual application of the statute, however, I do not understand how the as-applied analysis can proceed. (See id. at p. 1111 (conc. opn. of Werdegar, J.).) Nor does the majority cite any authority for deciding an as-applied challenge to a statute where the statute has not yet been correctly applied.
But the majority’s error is not merely that it has purported to consider and reject the mother’s as-applied challenge to a statute even though we already have, on statutory grounds, vacated the very order that is the subject of her constitutional challenge. The more serious error is that in so doing, the *232 majority has disregarded the fundamental principle of constitutional adjudication that “ ‘we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us.’ [Citations.] As the United States Supreme Court reiterated, ‘A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.’ [Citation.] Applying that principle, the high court observed that if statutory relief had been adequate in the case before it, ‘a constitutional decision would have been unnecessary and therefore inappropriate.’ ” (Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 230-231 [45 Cal.Rptr.2d 207, 902 P.2d 225]; see also Thompson v. Department of Corrections (2001) 25 Cal.4th 117, 128-129 [105 Cal.Rptr.2d 46, 18 P.3d 1198]; accord, Three Affiliated Tribes v. Wold Engineering (1984) 467 U.S. 138, 157-158 [81 L.Ed.2d 113, 104 S.Ct. 2267].) In this case, our finding of statutory error renders it unnecessary (and therefore inappropriate) to address the mother’s claim that the statute is unconstitutional as applied. Especially in this area—where the high court has cautioned that the constitutional protections “are best ‘elaborated with care’ ” (Troxel v. Granville (2000) 530 U.S. 57, 73 [147 L.Ed.2d 49, 120 S.Ct. 2054] (Troxel) (plur. opn. of O’Connor, J.), quoting id. at p. 101 (dis. opn. of Kennedy, J.))—I cannot fathom a justification for preemptive action. Tellingly, the majority offers none, other than to say that “[i]f we agreed with the mother that section 3104 is unconstitutional as applied to a parent such as herself who has been granted sole custody of the child, there would be no need to remand the matter.” (Maj. opn., ante, at p. 230, fn. 8.) But if the court on remand declines to order visitation, there will be no need to consider the constitutional question at all. Judicial restraint is a policy of avoiding the unnecessary resolution of constitutional questions, not a policy of avoiding remands.
Until today, judicial restraint had led us to construe statutes, if possible, so as to avoid constitutional questions. (E.g., Miller v. Municipal Court (1943) 22 Cal.2d 818, 828 [142 P.2d 297]; accord, New York v. Ferber (1982) 458 U.S. 747, 769, fn. 24 [73 L.Ed.2d 1113, 102 S.Ct. 3348].) The contra-positive policy adopted by the majority—i.e., that it is better to construe the Constitution than await the construction of a statute—mischievously undermines judicial restraint. I dissent strongly from this new policy.
2. The majority’s categorical declaration that the mother has no federal or state constitutional interest at stake in this proceeding is bereft of legal authority and is far broader than is needed to decide this case. The majority rejects the mother’s as-applied challenge under the federal Constitution and the entirety of her state constitutional claim at the threshold: In the majority’s view, a court order granting third parties visitation with the child over the objection of the custodial parent implicates no constitutional right of the *233 custodial parent, as long as the order is endorsed by the noncustodial parent. (Maj. opn., ante, at pp. 226-228.)
I do not know whether the majority is correct, although I observe that the majority fails to support its holding with citation to any legal authority or scholarly commentary and that neither party, nor their amici curiae, has contended that the mother has no constitutional rights here.[1] Moreover, under the majority’s approach, a custodial parent would have no constitutional protection whatsoever if a state overrode that parent’s objections and forced his or her child to go on visits with any third party—even with complete strangers, and even if such visitation was demonstrably harmful to the child—as long as the noncustodial parent acquiesced in the court order.
What is so disappointing is that this startling and novel conclusion is wholly unnecessary. As the majority elsewhere acknowledges, section 3104(f) is “[u]nlike the Washington statute at issue in Troxel” in that it “gives ‘special weight’ to . . . the decision of a parent who has been awarded sole custody of the child” and therefore “does not suffer from the constitutional infirmities that plagued the Washington statute considered in Troxel.” (Maj. opn., ante, at p. 226.) In particular, the majority has determined that the protections in section 3104(f) “prevent the situation that arose in Troxel in which the court ordered visitation over the objection of the child’s sole surviving fit parent” based on nothing more than the court’s own assessment of the child’s best interest. (Maj. opn., ante, at p. 226.) In sum, the majority has determined that section 3104(f) adequately protects even the rights of a child’s sole surviving parent from unwarranted intrusion by court-ordered grandparent visitation. It therefore follows that the statute adequately protects a sole custodial parent (like the mother here), whose rights are certainly no greater than those of the sole surviving fit parent in Troxel.
For similar reasons, I believe the majority is also premature in holding that court-ordered grandparent visitation that is supported by a noncustodial parent implicates no right of privacy of the custodial parent under the California Constitution. Instead, I would reject the mother’s facial challenge under well-settled law. Under our precedents, a statute may be invalidated on its face as violative of the state constitutional right to privacy only if the invasion of privacy is “sufficiently serious in [its] nature, scope, and actual or potential impact [as] to constitute an egregious breach of the social norms underlying the privacy right” (Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1, 37 [26 Cal.Rptr.2d 834, 865 P.2d 633], italics added) in at *234 least “the vast majority of its applications.” (American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 343 [66 Cal.Rptr.2d 210, 940 P.2d 797] (plur. opn. of George, C. J.).)[2] But section 3104, which requires the trial court to consider the right of a parent to exercise his or her authority in each instance before ordering grandparent visitation, applies also where the grandparents have been acting as de facto parents or where the grandparents seek to preserve an existing bond only through brief and infrequent visitation—and the mother has not shown that the statute would necessarily be unconstitutional in either instance. (Cf. In re G.P.C. (Mo.Ct.App. 2000) 28 S.W.3d 357, 365 [a two-hour supervised visit every three months “creates a minuscule intrusion into Parents’ lives”].) Accordingly, I would hold that the mother has not shouldered her burden to prove that section 3104(f) is unconstitutional on its face and would reserve judgment on her as-applied challenge until the statute is actually applied to her. Furthermore, I would leave for another day the broader issue of whether a sole custodial parent has any state constitutional protection at all against court-ordered visitation by third parties.
Because the majority has needlessly opined on these major constitutional issues without the aid of any legal authority and in defiance of fundamental canons of constitutional adjudication, I respectfully dissent from that portion of the majority opinion.

 Indeed, as stated in their brief, the grandparents “do not dispute that the Mother has a legally protected privacy right in regards to the parenting of her child[,] which would include control over relinquishment of her child to a third party for visitation.”

 As we noted in Kasler v. Lockyer (2000) 23 Cal.4th 472, 502 [97 Cal.Rptr.2d 334, 2 P.3d 581], “[t]he standard governing a facial challenge to the constitutional validity of a statute has been the subject of controversy within this court.” (Compare American Academy of Pediatrics v. Lungren, supra, 16 Cal.4th at p. 343, with id. at p. 412 (dis. opn. of Baxter, J.) and id. at p. 421 (dis. opn. of Brown, J.).) Here, as in Easier, we need not resolve the controversy because the mother has not made the requisite showing even under the standard most favorable to her position. (Kasler, supra, 23 Cal.4th at p. 502.)